Forest Hills Residents Association, Inc., Respondent, v. New York City Housing Authority et al., Appellants. (Action No. 1.)

Anita Margulis et al., Respondents, v. John V. Lindsay, Individually, and as Mayor of the City of New York, et al., Appellants. (Action No. 2.)

In the Matter of Herbert J. Miller, Respondent, v. Simeon Golar, as Chairman of the New York City Housing Authority, et al., Appellants. (Action No. 3.)

First Department, May 4, 1972.

*Alfred Weinstein* of counsel (*Norman Redlich, Stanley Buchsbaum* and *Eli Uncyk* with him on the brief; *J. Lee Rankin, Corporation Counsel*), for John V. Lindsay, individually and as Mayor of the City of New York, appellant.

*Otto M. Bonaparte* (*I. Stanley Stein, Gerald Davis, Edward L. Johnson* and *Jeanne Hollingsworth* with him on the brief), attorney for Simeon Golar, individually and as Chairman of the New York City Housing Authority, appellant.

*Donald Zimmerman* of counsel (*Finley, Kumble, Underberg, Persky, Roth & Grutman,* attorneys), for respondents.

*Franklin E. Tretter* of counsel (*Tretter & Tretter,* attorneys), for Citizens Housing and Planning Council of New York, Inc., *amicus curiae.*

*James I. Meyerson* (*Nathaniel R. Jones* and *Charles R. Carter* with him on the brief), attorney for National Association for the Advancement of Colored People, *amicus curiae.*

*Herbert Kahn* (*Elliot M. Abramson* and *Robert Cammer* with him on the brief), attorney for Queens Council for Better Housing and Community Development and another, *amici curiae.*

*Per Curiam.* In this taxpayers' action, defendants have appealed from an order and judgment which granted the individual plaintiff's motion for summary judgment in her favor (on the second cause of action) declaring that the conduct of defendants in proceeding with the construction of a public housing project in Forest Hills, Queens, in its present form, is illegal, and enjoining defendants from continuing with the project.

The plan and project were prepared in 1966 by the New York City Housing Authority. On November 9, 1966, the Authority duly submitted " for approval [by the City Planning Commission] a ' Plan ' and ' Project ' relative to a Federally-aided public housing project tentatively designated as 108th Street-62nd Drive Area in the Borough of Queens ". In the application of the Authority, the plan was described as one for the " clearance, replanning and reconstruction " of a substandard and insanitary site and " for the erection of a public housing project on the particular site  *  *  *  which project when completed will

aid in clearing '' the site. This, of course, represents a statement of the plan in most general terms, and there has been no change in such plan.

The 1966 application further states that the '' ' Project ' is a specific improvement to effectuate the ' Plan ' referred to and to provide safe and sanitary housing accommodations on the site specifically designated in the ' Plan '.'' And then in setting forth the '' Project Data '', stated to be '' Tentative '', the application specifies the '' Tentative Number of Dwelling Units '' at 828 and the '' Probable Height of Buildings '' to be '' 1 @ 22 stories '', '' 3 @ 12 stories '' and '' 3 @ 10 stories ''. It is understandable, of course, that the project was specified in '' Tentative '' and '' Probable '' terms for in making the application, the Housing Authority was well aware that, consistent with the powers vested in it, some changes in the project might be proper and necessary; and, considering the very general language of section 150 of the Public Housing Law, we conclude that such approach is proper.

Firstly, we conclude, contrary to the determination of Special Term, that the revisions in the 1966 approved plan and project, in the number, size, nature, location and capacity of buildings and units, as now adopted by the Housing Authority, are not such as to require resubmission to the City Planning Commission or to the Board of Estimate and the holding of a public hearing thereon. Neither the second cause of action as pleaded nor the circumstances as shown by the record require the holding of a further public hearing; nor is there involved a violation of notice and due process requirements.

The statute (Public Housing Law, § 150) does not provide for any public hearing in connection with the adoption or approval of a plan or project by the Planning Commission or by a local legislative body; nor is there a showing that a public hearing is required at this time by reason of any modification in the master plan of the city. (See New York City Charter, § 197.) The fact is that the Planning Commission, in approving the plan and project, expressly found that the same '' conform to the Commission's general plan for the City's future growth and the relevant parts of the Master Plan so far as adopted ''; and there is no showing that such finding lacks proper support.

Section 150 of the Public Housing Law provides that the prior approval of a plan or project by the local legislative body and by the Planning Commission '' shall be requisite to the final adoption or approval '' by the Housing Authority. So, the question for determination is whether, within the meaning of

that section, the approval by the City Planning Commission and the Board of Estimate of the particular plan and project, as originally proposed in 1966, is now effective to permit the Housing Authority to proceed with the construction as now planned.

We are bound to read section 150 liberally (see Public Housing Law, § 220), and for the purpose of giving full effect to the general intendment of the Public Housing Law and the general powers of the Housing Authority thereunder. It is noted that section 220 specifically provides that '' the enumeration of specific powers in this chapter shall not operate to restrict the meaning of any general grant of power contained in this chapter or to exclude other powers comprehended in such general grant. In construing this chapter consideration shall be given to its purpose and intent, among others, to empower an authority to do any and all things necessary to secure the financial aid of the United States Housing Authority and the state of New York, or any department, agency or instrumentality of the federal or state government, in the undertaking, planning, construction, maintenance and operation of any project.''

The '' plan '' required by section 150 to be approved by the local bodies contemplates '' a plan or undertaking for the clearance, replanning and reconstruction or rehabilitation of a substandard and insanitary area or areas and for recreational and other facilities incidental or appurtenant thereto to effectuate the purposes of article eighteen of the constitution or any other provision of the constitution delegating any similar power or providing homes for persons of low income.'' (Public Housing Law, § 3, subd. 13.) And the '' project '' to be approved means '' a specific work or improvement to effectuate all or any part of a plan. The term shall include the lands, buildings or any dwelling units therein ''. (*Id.*, subd. 14.) Certainly, in approval of a plan and project, the Planning Commission and local legislative body consider the same as a unit and the number, height and design of buildings and of units are important solely as a part of an entire package. Mainly to be considered in the approval of a plan and project is the clearance, replanning and reconstruction of substandard and insanitary housing in the particular area to fill a need for low-income housing and, in general, the general welfare of the people of the community. Consideration is required to be given to population density, transportation, traffic and vehicular parking, school and store availability and parks, recreational, health and other community facilities.

The details in the ultimate construction and carrying out of the project could be and were intended to be left to the broad

powers of the Housing Authority. (See Public Housing Law, § 37.) This was intended and was proper and necessary, bearing in mind that the Housing Authority was bound to comply with general and applicable planning, zoning, sanitary and building laws, ordinances and regulations (see Public Housing Law, § 155). Particularly, architectural and building detail was required and intended to be committed to the Housing Authority in order that it could cope with and resolve architectural and building problems, meet appropriation and cost limitations, and do any and all things necessary to secure the approval and financial aid of the United States and State of New York agencies, including the Federal Department of Housing and Urban Development (see Public Housing Law, § 220, *supra*).

In the final analysis, the test to be applied is whether the construction, as ultimately determined upon by the Housing Authority, represents a substantial deviation in the plan or project considered as a whole as it was approved by the Planning Commission and the local legislative body for the purpose of clearance, replanning and reconstruction of substandard and insanitary housing. Thereby, the purpose and general wording of section 150 are met, having due regard to the powers and functions of all the local agencies and bodies. (Cf. *Matter of Tinsley* v. *Monserrat*, 26 N Y 2d 110, and dissenting opn. of STEVENS, P. J., 33 A D 2d 316, 323.) Here, we conclude that there was no substantial deviation; that under the circumstances here, the changes in the number, design and height of the buildings (now to be a total of three buildings 24 stories high) and the comparatively minor increase in the number of units (828 to 840) do not constitute such a variation in the plan and project as originally proposed and approved as to require resubmission of the plan and project to the Planning Commission and the Board of Estimate.

The order and judgment, insofar as appealed from by the respective defendants, should be reversed and vacated on the law, without costs, the motion for consolidation denied without prejudice to renewal of application at Special Term; the second cause of action herein severed from the first cause of action; and final judgment directed on the second cause of action, declaring that the plan or project described in the complaint may be carried to completion by the New York City Housing Authority in accordance with its present plans as to number, size, nature, location and capacity of buildings and units without additional approval by the City Planning Commission or by the Board of Estimate.

Nunez, J. P., Kupferman, Murphy, Steuer and Eager, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, so far as appealed from, unanimously reversed and vacated, on the law, without costs and without disbursements, the motion for consolidation denied without prejudice to renewal of application at Special Term; the second cause of action herein severed from the first cause of action; and final judgment directed on the second cause of action, declaring that the plan or project described in the complaint may be carried to completion by the New York City Housing Authority in accordance with its present plans as to number, size, nature, location and capacity of buildings and units without additional approval by the City Planning Commission or by the Board of Estimate.